IN THE MATTER OF WILLIAM R. MORRIS,
AN ATTORNEY AT LAW.

Argued November 23, 1976—Decided January 4, 1977.

*Mr. Frederick C. Vonhof* argued the cause for the Essex County Ethics Committee.

*Mr. Edward R. McGlynn* argued the cause for respondent (*Messrs. McGlynn, McGlynn and McCormack,* attorneys).

PER CURIAM. This is a clear case of professional misconduct by an attorney arising out of a contingent fee agreement entered into pursuant to *R.* 1:21–7.

John A. Kennedy had been seriously injured on December 10, 1970 in a collision between two motor vehicles. Kennedy was a passenger in one of the vehicles which was owned and being operated by Alcides Ferreira. Allegedly, there was a causal relationship between the injuries sustained in the accident and his death in January 1972. In early December 1972 respondent was consulted by Olga Kennedy, the widow of the decedent, and was retained to bring suit under a written contingent fee agreement which set forth the fee schedule contained in *R.* 1:21–7(c).

Respondent filed suit against the owner and the operator of the other vehicle involved in the 1970 accident on behalf of Mrs. Kennedy who had been appointed general administratrix and administratrix *ad prosequendum* of her late husband's estate. The suit included counts for personal injuries and wrongful death. Joined in the same suit were counts on behalf of Alcides Ferreira for property damage and personal injuries.

After one mistrial, the case finally was tried to a jury verdict and judgment. Mrs. Kennedy as administratrix was awarded $24,500 as damages for Kennedy's personal injuries during lifetime and $34,000 for wrongful death. The same judgment awarded Ferreira $11,000 for personal injuries and stipulated property damages amounting to $400.

The Ferreira recovery is involved in this ethics proceeding only to the extent that the Committee found that respondent "was derelict in his duty to his client in his representation of both the passenger and the owner and operator of the automobile" in which the passenger was riding. See *Opinion No.* 156 of the Advisory Committee on Professional Ethics (July 24, 1969).

Two checks were issued for the Kennedy judgment by the New Jersey Property Liability Insurance Guaranty Association, the carrier for the defendant being in liquidation.

One check payable to Olga Kennedy as general administratrix and respondent was for $24,500. The other, payable to Olga Kennedy as administratrix *ad prosequendum* and respondent was for $34,000. After respondent had Mrs. Kennedy endorse both checks, he deposited the $24,500 check in a savings account in the name of William R. Morris. The check for $34,000 was deposited in another account in the name of William R. Morris, Special Account.[1]

After the checks had been deposited, respondent, on December 15, 1975, went to the Kennedy home and attempted to induce Mrs. Kennedy and her son to accept $13,234 as their share of the $58,500 judgment. He brought with him a statement showing alleged disbursements of $28,270. Included were $10,700 for transportation, $5,850 for investigative expense, $7,020 for associate counsel and $2,600 for medical reports and testimony.

The Kennedys protested the amount offered as inadequate and, following further discussion, respondent persuaded them to accept $20,000 ($15,000 for Mrs. Kennedy and $5,000 for her son). Respondent made out checks dated December 15, 1975 on his Special Account. He delivered them to the Kennedys whom he then accompanied to the bank where they used the checks to open savings accounts.

On December 23, 1975 respondent stopped payment on the two checks and by motion dated January 7, 1976 he sought the allowance of a counsel fee in excess of that permitted by the contingent fee rule. See *R.* 1:21–7(f). At this juncture Mrs. Kennedy engaged other counsel.

A hearing was held before the trial court which denied respondent's application for additional fees and entered an Order Fixing Distribution of Proceeds. The order disal-

---

[1] At the hearing before the Essex County Ethics Committee it came to light that respondent, in his 40 years of practice, had never maintained a trust account or kept proper trust records.

lowed $24,695 of the claimed $28,270 in disbursements, set respondent's fee at $17,951.67 and denied rsependent's charge of $3,000 for "other services rendered."

Respondent now concedes that he made a grave mistake and that it was improper for him to have attempted to have Mrs. Kennedy settle for less than she was entitled to under the contingency agreement. His excuse is that, in view of the work he was called upon to perform, he honestly thought he was entitled to a fee in excess of that provided for by the agreement. He also admits that his failure to maintain a trust account over a period of 40 years was a serious violation of *R.* 1:21-6.

We find respondent's conduct to be inexcusable. By juggling figures and claiming "crassly exorbitant" disbursements he sought to have the Kennedys accept in settlement less than one-fourth of the jury verdict in their favor. His performance was both fraudulent and dishonest, and reflected adversely on the integrity of the bar. His admitted failure to maintain a trust account and adequate trust records, and his legal representation of both the passenger and the owner and operator of the vehicle in which the passenger was riding are added aggravations.

Considering all the circumstances we conclude that the appropriate discipline is suspension from the practice of law for a period of one year. So ordered.

*For suspension for one year*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*Opposed*—None.